Next case of the day, and that is Assured Guarantee Corporation v. Madison County, Mississippi. And Mr. Thompson, we'll hear from you representing Madison County. Thank you, Judge Jolly. May it please the Court. Your Honors, we're here today because Madison County is asking this Court to reverse the District Court below. We're further asking, or Madison County is asking that you render judgment in favor of Madison County today. The established law makes it clear that the determination by this Court is as simple as applying the simple language of the contract or the contribution agreement. That's how simple this is when we've reviewed this. Section 3 of the contribution agreement is the heart of the issue before this Court today. Section 3 contains four sentences. The first sentence starts with the phrase, quote, provided that. Assured has said in their briefing that provided that, or that everyone agrees that provided that means a condition, so that is not in dispute. Provided that. So provided that, or only condition that, reading the first sentence of Section 3, provided that, or only condition that, the covenants... Provided that or notwithstanding? Notwithstanding begins the fourth sentence, Your Honor. Okay. On the first sentence, provided that, or only condition that, the covenants, agreements, and obligations of Parkway East, or the district as it's also referred, as stated herein are performed. So the question that comes to mind immediately is, what is herein? And if you look in the document, herein, the fourth sentence reads, Parkway East hereby covenants and agrees to provide full reimbursement to the county no later than two years. It's that simple. It's that plain. And that is undisputed. Well, what did the district court hold then? The district court didn't think it was that simple. Well, the district court did not think it was that simple, and I'm going to explain to you why I think they were wrong. That's what it said first. Well, what the district court said was that you have to take sentence four, and you have to make sentence four a completely independent, segmented provision. And the way it got there was, or Your Honor, if I can go back just a minute to get back to that, when you look at sentence one, and you look at sentence four, they are mirror images of each other. The sentence one says, the covenants, agreements, and obligations. Sentence four says, Parkway East will covenant and agree. So you have covenant and agree in both the first sentence and the fourth sentence. In the first sentence, it says they're going to advance monies. In the fourth sentence, it talks about reimbursing money. And then the question is, what are we talking about, to advance money and to reimburse money for what? For the deficient debt service payment. So the question is, how did the district court get to its conclusion from reviewing this contribution agreement? If you review the district court's order, in the order it says, we're going to segment these sentences for ease of reading. We're going to segment these sentences. So what the district court did is it took the first sentence, and it segmented it as a single independent thought. It then, as segment number two, it segmented the second and the third sentence, saying they were separate and independent thoughts. Then it took the fourth sentence and said it is segment number three. And the district court said sentence one is, quote, independent of sentence four in its 2016 order, actually in both orders. Sentence one is independent of sentence four. And in contract law, you've got to read the whole contract. In this particular case, you've got to read the entire contract. What did he say that sentence four said? He said that sentence four. He said sentence four. He says everybody agrees that sentence four means what it says, which is that the Parkway will reimburse within two years. But he said it's completely independent of sentence one. As far as I'm concerned, he's cutting that out of the contract, or you could put it in a completely different section. He's saying sentence one, sentence four does not apply to sentence one. And I think part of the problem where the district court got on there, got there is, in its order, it said it would be unusual for a timeline in part three, or sentence four. It would be unusual for sentence four to apply by implication to sentence one. Sentence four, as the sentence began, would not withstand it? Yes, sir. And he said it would be inconsistent for sentence four, for the timeline in sentence four to apply to sentence one. What did it apply to? What did it apply to in his view? In his view, it was a completely separate, independent thought. It was independent of everything else in that if they want to, if the county wants to push for reimbursement, then they can file a separate, independent lawsuit over that. That's what Judge Reed said, which completely ignores the entire paragraph, because what he finally said was ... Was he saying that Madison County should sue Parkway, is that what he said? Yes, sir. He said you can sue them in a separate lawsuit and collect your money. Now, where, what he further went, he said it would be unusual for timeline in part three, or sentence four, to apply to by implication to sentence one, and then he says, given among other reasons, part three opens with the words, quote, notwithstanding the above. And when you look at the word notwithstanding the above, assured is put in their briefs as a means to spite, in spite of, irrespective of, and I agree with all those words. But it doesn't go as far as what assured says. Assured in their brief says it carves out that first sentence. What Judge Reed said is it is independent of that first sentence. And it's very clear in interpretation and analysis of that word, the United States Supreme Court has said in Cineros v. Alpine Ridge, the use of such, quote, notwithstanding, the use of such notwithstanding clause overrides conflicting provisions. So then the question to me comes up, okay, what's conflicting before you get to notwithstanding the above? If you look at sentence two in section three, sentence two refers to tax sales. If there are tax sales, then you shall immediately reimburse the money. That conflicts with sentence four, after notwithstanding, because sentence four says the tax sales are immediately when you sell the property, you have to turn over the money. But section four says regardless or irrespective or notwithstanding the above, if you haven't done what sentence two says, then within two years, you've got to pay us from any source of funds whatsoever. It's a completely different thought. It's completely separate from the tax sales in sentence two. There's a conflict between those two. So notwithstanding the language on the tax sales and turning it over immediately to us, you have to reimburse us within two years, regardless of the source of funds is what that means. Sentence three talks about interest on tax sales. So if you sell property for taxes and you go redeem it, then you have to pay the statutory rate to get you when you redeem it. And so sentence three goes kind of with sentence two. If you have a tax sale, then you redeem it and you've got to pay the statutory rate. So that could possibly or probably does conflict with sentence four. But here's the question, Your Honor. Sentence one does not conflict with sentence four. So notwithstanding does not carve out, it is not independent. When you read those two sentences together, it's very clear, it's very plain what it means. It means the county's payment of debt service set forth in sentence one is conditioned on the district's promise to repay this money within two years. So it's this simple, it's this plain. This is a contribution agreement. This section is entitled county's contribution. So what the county is saying is we were going to help you develop this land if within two, you're going to pay us this way, through tax sales, through the special assessments. The financial markets went down in 2008. They weren't able to, the property didn't take off like it was supposed to. They weren't able to have the special assessments. So we're going to give you a loan, or we're going to help you if you can't make the payments, but it's going to be only conditioned that you meet your promise herein, which your promise herein is you will reimburse us within two years no matter the source of the funds. It's that simple. It is that plain. And the court got off on another issue. So, Judge, the question comes, what does two years mean? Two years means two years in my book. So if they don't reimburse in two years, the county is saying we're agreeing to contribute for this time, but we're not agreeing to contribute after this time period. That's the whole intent of this paragraph. That's the plain reading of it. It's like I will help contribute to your, if someone comes to me and says I will help contribute to your campaign, that doesn't mean I'm going to pay for your campaign. It's more like you have an overdraft or the bank covers a check for you because you can't pay it and the bank says we're going to help, we want you as a customer, we're going to contribute to this, but I guarantee you if you don't pay the bank back, they're going to quit contributing. And that is no different than here. We're going to loan money to you in this period because we want this area to develop, but if you don't pay us back in two years, we're not going to keep contributing to you. And that's where I think the district court got off base was when it segmented these sentences and gave them in. Is the problem here part of the problem, the offering circular under which the bonds were sold? Is it inconsistent with your argument? The way the bonds were sold? No, ma'am. The bonds were sold and in the agreement with the bonds, the official statement that was sold with the bonds, it specifically states on page 232 of the record, it says Parkway, the Parkway chairman signed it, and said the contribution agreement conditions the county's agreement to make payments on the district's compliance with the covenant's agreements and obligations of the district herein. That's on page 232 of the record. So the sale of the bonds was completely consistent with this. Assured it's not even a party to this contract. They'll say, well, we have a third-party benefit interest here because we are the bond insurance company, and I agree. And the bond insurance, they guarantee payment of these shortfalls. That was the whole purpose, the whole intent of this agreement. We're going to contribute. That's how the bonds were sold. And if we, if you don't reimburse for two years or whatever the reason, they're unpaid payments, then the bond insurance is going to step in and guarantee payment. It's that simple. The plain language of the contract. So, Judge, you know, I go back to if our interpretation of this contract is not correct, which the plain language says, in use of the word notwithstanding, certainly does not carve out under any scenario, the question comes up, what's the purpose and what's the meaning of the paragraph about reimbursing within two years? It makes that, under the reading that the district court gave, it makes that sentence meaningless. It makes it meaningless because the county is not going to rely on collecting from Parkway East. They're not going to, nowhere in that document, nowhere can you read, nowhere can you read in the document that the county is assuming the full indebtedness of the $27 million bond issuance. Well, that's their argument. Their argument is that it's the county's, this is the county's obligation, maybe not in the first instance, but the county pays the whole $27 million. Well, their argument, yes, ma'am, their argument is that the county should pay for this because it's in their interest. And I will tell you, it is in the county's interest for the area to develop. It is in the county's interest for the area to develop. It's in the interest of a mortgagor on my home that I make my payments. It's in the interest of other people that I continue to make my payments, but nowhere did the bank say it was going to take on my payments. And nowhere here, nowhere here did the county say we're going to assume the full debt. You cannot read that in this contract. You cannot read it in Section 3 without misapplying the sentences by having them as segmented, independent sentences and completely different thoughts. What's the status of all this right today? What's happened to the area, the space, the assets, the tax collection, all this? With the economic development, the economic development has not taken off at this point. The bond insurance company is making the payments on the bonds at this time. The county made payments for two years. Then the bond insurance took over. But there are hopes that it will take off at some time. There's an interstate that runs up. I-55 runs close to this area. Part of the problem was St. Dominic's Hospital didn't get approval to build the hospital. I-55 runs there. They're going to do another exchange. If that works out, it may help this property to take off. Okay, thank you, Mr. Thompson. Mr. Speier, we'll hear from you. Good morning. May it please the Court. I am John Speier. I'm half the appellee. I'd introduce my co-counsel, Jonathan Nelson, who's with me. The county arguments to reverse the district court are contrary to the rules of interpretation required under Mississippi's four-corner analysis. The county asked in its brief and its argument today to accept an intent that is inconsistent with the essential purpose of the contribution agreement based on its four corners and each and every term contained in it. Initially, I would point out in the argument, counsel references the provided that sentence and only chooses to acknowledge the word performed. There is no doubt that the sentence says performed and or provided. There is no doubt that the obligation of the district to reimburse could not be performed at the time of closing, and there is no doubt that other obligations contained in the contribution could be performed prior to closing. The contribution agreement reflects and was adopted by the county board of supervisors in January 2005. Closing was in July of 2005. A considerable period of time passed. And obviously, I don't mean to interrupt your argument. You don't have to answer this now, but I want you to get what does this sentence mean. The sentence is a conditional sentence, but not contained in it is the obligation to reimburse. The county ignores the word performed, and it ignores— The county says I have no further obligations if you don't pay me within two years. You admit that it says that? It does, but it's preceded— And if it says that, then the bonds are going to be in default, and they bought insurance to cover the default. Well, Your Honor— Your obligation comes in. You're not obligated if the county defaults. Well— Are you not obligated to pick up the indebtedness? Well, the sequence of events are the contribution agreement prepared and agreed to by the county board of directors in January 2005 contained that language. There was no insurance contemplated. There was no insurance involved until July of that year. So at the time the contribution agreement was approved by the county and the form that was executed at the closing in July, there was no consideration whatsoever, and the record reflects that, and I can cite to the— We don't have to decide whether you have an obligation to pick it up, I guess. Well, I— It doesn't say anything about your obligations in this contract. All it says is whether they are obligated to pick it up. Correct. I want you to tell me how they are obligated to continue to pay the payments that Parkway is failing to make. Well, the term notwithstanding the above removes, and you can use carve out or removes, despite what is above, not just the two sentences. This provided notwithstanding the above doesn't say notwithstanding the above two sentences. It means everything, and applying the four-corner analysis, you have to give meaning to the words that are written, not to— County contribution is the name of the—is the topic of the particular paragraph, and it sets out the terms of the county's contribution. Correct. That's what the subject matter of the paragraph is. Essential purpose. Notwithstanding the county's contribution. We are not going to pay this thing if you let the debt go more than two years. I think that's the intent. Then that's—so then it doesn't say anything about you picking it up, but then that's what the insurance policy says, that you pick it up then. Well, the insurance policy—here's the sequence of obligation as reflected in the contribution agreement. The district is to assess, assessment, and collect them. Those funds would be used to pay bondholders. The second obligation in the event, in the first sentence, in the event there's a lack of collections to pay bondholders, the county will then make contribution. The essential purpose of this document is to reflect that the county has the obligation, in case property owners in the district do not pay, that the county will make up the difference to pay bondholders. For two years. For two years. Pardon me? For two years. No, it doesn't say two years. It does say two years. Well, that's in the— So what does it mean? Well, I can address the issue that is raised. There's no conflict and no dispute. Clearly, if there's a tax sale— I ask you the question. What does it mean? It means— What does two years mean? It means that it's a promise. It's a contractual obligation to pay. The county, not a condition, a contractual obligation to pay. It is separated from the purchase. There's a limitation on the obligation to pay, isn't it? It says that this obligation to pay is no later than two years. Correct. Unless—if you don't provide full reimbursement, it lasts two years. If the district didn't either buy a tax sale, in which case they have an immediate obligation to turn those funds over to the county for reimbursement, or from whatever other sources they may have, the outer side limit is two years, and I don't disagree. The real question— Well, the outer side limit is two years, so they don't have an obligation to pay anymore. And then insurance kicks in, and there you are. And that's why you got that premium. Well, the premium and the insurance really is for a different purpose, Your Honor. But the real issue, the legal issue, is applying Mississippi's four-corner analysis and giving effect to all the words. And the phrase, notwithstanding the above, is critical, because that can only mean—the only reasonable, logical interpretation of that is this is not part of the initial provided that sentence. It is not a condition. And the county certificate clearly establishes that. I don't care whether it's a condition. It is a term of the contract. And whether it's a condition preceding or whether it's—that has failed, or whether it's an outright breach of the contract doesn't make much difference. Well, I believe it does. Okay. I believe it does for this reason, Your Honor. If it's a breach of contract, as the district court found, then the county still has to pay. It still has to make contribution. And it has a legal remedy as any breach of contract. Wait a minute. The county has obligated itself to Park East, Parkway East, to continue these payments, you say? Correct. And where is that language? Bob, I'm not responding to your question, Your Honor. The obligation, the difference is— Where is that obligation? The condition, if this obligation to reimburse is a condition, the county is correct. We don't have to pay. It's a condition preceding. But as the district court, and we believe, correct in giving effect to notwithstanding the above, the phrase regarding reimbursement is a contractual promise. And the contribution agreement, nothing else in there, contradicts that. And furthermore, the essential purpose of this document is the county contribution. It turns upside down the essential purpose of this agreement to be sure that bondholders are paid when assessments are not levied or not collected. As far as the insurance, that is the third tier. We know that counties fail. We know that counties are unable to meet their obligations. We also know that counties sometimes don't perform their obligations. But this obligation, though, was Parkway's obligation, right? It started out there. But we know that in 2008, Parkway East— It was Parkway's bonds. Correct. Not Madison County's bonds. Well, there weren't. They were not their bonds. But they gave the essential contribution obligation because it is unlikely and practical means for an entity created by the county with no assets, no property, to be able to back up the event that property owners decide they can't pay or won't pay. So the county had to step in. That's what this is. If you can't collect or assess sufficient, we will pay. It's an obligation of the county and an obligation to— The policyholder in this case is Parkway. Pardon me? Policy. You have your insurance policy agreement with Parkway. The policy is to benefit the bondholders. The policy pays the bondholders, and the bondholders subrogate their rights to Assured, and their bond interest then becomes Assured's. That's why we're here. You have a debt against Parkway. Well, not exactly. We have an allegation, but that's not the subject of this summary judgment. But Parkway East has no assets. They have no ability to do anything. This is a shell company. I'm on the wings of hope right now. And that's exactly what the situation is with the county. The county does have a legal right based upon the interpretation that notwithstanding the above means the following obligation to reimburse is not a condition. It's a legal promise. Now, we just read the four corners. We can't infer intent. We can't add words. I noted that, again, the county doesn't talk about provided, and the way that was provided in the contribution agreement was a legal obligation of the district. The county has a lot of ways to deal with that legal obligation besides suit. But regardless, the four corners establishes, and that analysis establishes, that the obligation of the district is a legal obligation, not a condition to the performance of the county to make contributions when necessary. If that were the case, it turns the entire essential purpose of this document. It turns it upside down. Did Parkway East have any assets? Weren't they collecting taxes or something? I mean, was there something that you could go and say you aren't paying like you should and you have somewhere to go for the resources to pay this off? Parkway East was created pursuant to Mississippi statute that allows municipalities and counties to create independent subdivisions to issue bonds in order that the bonds issued are not counted as debt against a county's maximum debt limitation. That's what the statute says. That is fine, except the created entity has no assets. It can issue, you know, levies, although it's not required to in the contribution agreement if you read the words. But if the property owners don't pay as they did in 2008 and 2007, the agreement certainly contemplates the intent of the parties that the county would come in and pay. And if the county doesn't have the reserve funds to do so and it doesn't have the assets or the willingness to do so, the insurance does, as we have noted, we pay because the county didn't and our obligation has been satisfied. The other point that I would like to make is that besides not giving credence to the word provided, the county ignores the county certificate that was provided at closing that essentially tracks verbatim. That's a closing document. It is a closing document. If I had a nickel for every one of those documents I prepared that looked just like that, I'd be rich. And it speaks exactly to what the situation was on the closing date. It does not really address. Well, if I may respond. Under Archvin, excuse me if I got it right, the Arvitone case, let me be sure. I think that that case is cited in our brief. I'm pretty sure that it is. But in looking at that case, you consider these two documents together and you read them in concert with one another and you give them full meaning under the Four Corners analysis and under many cases in Mississippi and otherwise that we cited. They are read together because of three things. One, they were executed at the closing at the same time. They dealt with the same transaction. And they were executed by one of the parties to the transaction. Where does that get you? Well, I will explain. First, it gets us to the point that the county certifies an executed certificate that says we are satisfied that all obligations, covenants, and agreements have been satisfied by either performance or they were provided. Now, some were performed in addition but prior to closing. The district agreed to hire Butler Snow as bond counsel. Obviously, that was in the contribution agreement. It was prepared in January of 2005. And obviously, bond counsel had to be retained to get to the closing. There were others. There was an obligation to agree that 10% of the funds available for distribution on construction of the infrastructure would be withheld. That was provided in the trust indenture. The trustee agreed to do that. Those things were performed. All of those that could have been provided were provided to the satisfaction of the county based upon the language contained in the county's bond amortization certificate, page 4641, where the county says for and on behalf of the county, the covenants, agreements, and obligations of the district as stated in the contribution agreement have been performed and or provided to the county. The fact that the county provided this document at the closing is an admission. It's an acknowledgment. It doesn't get you there. But the one thing, I read the offering circular. The offering circular has flat-out statements that it seems to me don't square with the actually more limited obligation of the county under this paragraph we've been talking about. The offering circular is very broad, and I don't think that that exactly meets up here. The offering circular is not. There's a law firm on the line. Well, that's the point. Somebody did the offering circular, and somebody has some obligations with regard to the disclosures. That's not the issue, and the statement's in there. They're not here. The point is the offering circular is an independent, separate document, not agreed to by the county or by the district. It's not obligation of effect. It doesn't have any effect on the intent within the four corners. It's outside the four-corner analysis. And what we have here is read the words, and the words in the contribution agreement and the words in the county certificate, which are considered together and read together because of their connection as a global part of the transaction and executed at the same date, provide that we have to look at both. And when the statement is made by the county that the satisfaction has occurred either by performance, which is the only thing the county wants to talk about, they ignore the provided. And what was provided was a legal obligation that would allow and require the county to go forward and make up the shortfalls in assessment collections, and even if that happened. Furthermore, you still have hanging out there that two-year limitation provision. It has not been answered to. I think that's right. I think that is the obligation of the district to reimburse within two years. But it's not an excuse for the county to avoid their obligation. And when 2008 came. Where does that obligation arise from? It arises from its agreement in the first sentence that says, provided that, followed with, in the event the levies or assessment collections are insufficient to pay bondholders, we will contribute. That's the contribution agreement. That was the essential purpose of the agreement. And the issue with regard to reimbursement, the county is reading outside the four corners. But the two years, you say, does limit the county's. No. I think the two. What do the two years mean? The two years is a legal obligation to perform. A breach of contract is the result if they don't perform. But it's not a condition precedent to relieve the county of its obligation. We have two independent bilateral promises because of the notwithstanding the above and because of this certificate that clearly read and given full meaning with the contribution agreement reflects the intent of the parties that the conditions, whatever they are, have been, quote, satisfied. The obligations have been satisfied. They are no longer conditions preceding to the county's obligation. They are independent promises. And that's not what the county has done. The county has. You're doing a great job arguing from that, but I just don't think that's going to get you there. Well. You're doing a great job trying, but I don't believe it's going to get you there. Let me conclude. Regardless of the intent, regardless of the intent, this certificate acts as a quasi-estoppel to the county going back on its word in this document and using dissatisfaction as a reason not to pay. If there is any effect or any substance to the doctrine of the principle of quasi-estoppel, it should apply in this case regardless of the intent. The county spent four years not paying because it was dissatisfied with what the district did. In spite of this clear statement that they are satisfied with the covenant's agreements and obligations of the district as stated in the contribution agreement, which exactly tracks the language in the provided that sentence. Thank you, Mr. Chairman. Thank you. We have some time for rebuttal. Judge, I'm going to make a disclaimer here. I was told not to say this, but I'm going to say it anyway. When I read this county bond amortization certificate approval, the only thing I could think of was when I married my wife back in 1983, she was satisfied then, and if she couldn't raise any instances where she's not satisfied today, that's what this means, because she's unsatisfied with a lot of things today. This is nonsense because what this is, this is. You probably shouldn't have said that. Well, I probably shouldn't have. Well, it's being recorded. You may hear that, but this is a document that was signed at closing on July 27 of 2005, and let me tell you what it does not say, what Assured says. It does not say all covenants and so forth. All is not in there. This is an approval of the bond amortization schedule. That's all. It's a closing. It has nothing to make about the fact that the offering circular here in the section that describes the contribution agreement is very broad. I mean, it does not, is not limited the way you say it is. Yes, ma'am. When you read the contribution agreement, the summary of the contribution agreement on page 231 of the record is a little bit broader, but you turn over to the next page on the record 232, payments under the contribution agreement, and it says the contribution agreement conditions the county's agreement to make payments thereon on the district's compliance with the covenants, agreements, and obligations of the district contained herein. And there's a line in there, so it goes farther to say, in addition, the district covenants and obligations are set forth, and it tells exactly what it is. Well, I think that the preceding page is pretty flat. Well, yes, ma'am. The preceding page, if you read, it says that under the contribution agreement between the county and the district, county has agreed to make county contribution payments under certain circumstances, and if they fail to, the district fails then to levy the funds, it's going to. The thing was marketed, it looks to be anyway, as if it was marketed as the county's obligation fallback. Nowhere in here was it marketed as the county's obligation. If you read the last sentence in there, no later than two years, so it's the exact language there. Now, on this date, Your Honor, when they talk about when the contribution agreement was signed, what they don't want to talk about is on that same date, on July 27 of 2005, is the exact same day that the policy of insurance is dated. So they want to go to this agreement. Let's go to the policy of insurance on the exact same date. But the fact of the matter is nowhere in this contribution agreement, nowhere in the contribution agreement does it say the county is going to assume this full debt. It's not the intent of the contribution agreement. It wouldn't make logical sense for the county to do that. And I ask, it begs the question, if that was the intent, why would they ever go pay $257,000 for bond insurance? It defies logic why you would do that under their argument. So what was the collateral? I mean, what was, could they recover if there was a, they had to pay out? I mean, did they have some sort of, the insurance company have some sort of backup money that was going to come to them in the event there was a default? It seems to me they depended on the county coming through, but there were no assets from Parkway. So why give this insurance policy? Well, actually, Parkway East is set up as a public improvement district by the county. And what assets Parkway East has is it's got the right to go make special assessments with the landowners, and it will make this money over time. The problem happened is when it was developed in, you know, starting in 05, then in 08, when all kinds of property in Mississippi went up for sale, and I'm sure elsewhere too, they weren't able to collect their special assessments at that time. The property did not take off. But Parkway East is not insolvent. Parkway East is still, it's a separate corporation. He said it's a sham. Nowhere in these pleadings has anybody said it was a sham. But it is an independent, separate corporation, and the assets it has in the future, hopefully this land will take off. It's in the fastest growing county in Mississippi. And when it takes off, they'll have these special assessments. They don't pay. Then what they can go collect are the tax sales. So they will have something. But it goes back to, for their argument, notwithstanding, notwithstanding in the fourth sentence carves out the first sentence is really just silly. It makes no sense at all. It's not the correct interpretation of notwithstanding. There's nothing conflicting in sentence one and four. So you read it as— Thank you, Mr. Thompson. You have a red light. Oh, I didn't realize. Thank you. If that completes the arguments that we have—